Thomas V. Wang
Alaska Bar No. 9806035
thomas@anchorlaw.com
Laura D. Fisher
Alaska Bar No. 1305013
laura@anchorlaw.com
ASHBURN & MASON, P.C.
1227 West 9th Ave., Suite 200
Anchorage, AK 99501
Telephone: (907) 276-4331
Facsimile: (907) 277-8235

Galvin Kennedy (pro hac vice pending)
Texas State Bar No. 00796870
Galvin@KennedyAttorney.com
KENNEDY LAW FIRM, LLP
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
Telephone: (713) 425-6445
Facsimile: 888-535-9271

Carl A. Fitz
Tex. State Bar No. 24105863
FITZ LAW PLLC
3730 Kirby Dr. Ste 1200
Houston, TX 77098
Telephone: (713) 766-4000
carl@fitz.legal

**ATTORNEYS FOR PLAINTIFF
AND PUTATIVE CLASS AND
COLLECTIVE MEMBERS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| **James Ashenfelter**, individually and on behalf of all others similarly situated, | § § § | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| Plaintiff, | § § | **AND** |
| | § | **JURY DEMAND** |
| v. | § § | |
| **Hecla Greens Creek Mining Company,** | § § | Civil No.: |
| Defendant. | § § | Judge: |

Plaintiff James Ashenfelter ("Ashenfelter" or "Plaintiff"), individually and on behalf of all others similarly situated, files this Original Collective and Class Action Complaint against Defendant, Hecla Greens Creek Mining Company ("Greens Creek" or "Defendant"), showing in support as follows:

## **NATURE OF THE ACTION**

1.     James Ashenfelter brings this collective and class action to recover unpaid wages and other damages under the federal Fair Labor Standards Act ("FLSA"), and the Alaska Wage and Hour Act, AS 23.10.050-AS 23.10.150 ("AWHA") from Defendant, Hecla Greens Creek Mining Company.

2.     Plaintiff brings this lawsuit individually and as a collective action under FLSA on behalf of other employees of Defendant who, like him, were not paid for all time worked and time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek while working for Defendant.

3.     Plaintiff also brings this lawsuit individually and as a Rule 23 class action under the AWHA on behalf of other employees of Defendant who, like him, were not paid for every hour they worked and time and one-half their respective regular rates of pay for all hours worked over 8 hours per day or 40 hours during each seven-day workweek while working for Defendant.

4.     Defendant employed Ashenfelter as one of its Hourly Employees (defined below) in Alaska.

5.     Ashenfelter and the other Hourly Employees regularly work more than 40 hours a workweek.

6.     However, Defendant does not pay Ashenfelter and the other Hourly Employees for all their hours worked, including overtime hours.

7.     Rather, Defendant requires Ashenfelter and the other Hourly Employees to suit into protective clothing and safety gear necessary to safely perform their job duties and travel into the mines also known as "donning," while on Defendant's premises, all prior to being "clocked in."

8.      Likewise, Defendant requires Ashenfelter and the other Hourly Employees to change out of and store their safety gear and protective clothing and wash-up, also known as "doffing," while on Defendant's premises, after being "clocked out." Together, these practices are referred to in this pleading as Defendant's "**pre/post shift off the clock policy.**"

9.      But Defendant does not pay Ashenfelter and the other Hourly Employees for the time they spend donning and doffing their safety gear and protective clothing, traveling into the mine, and washing-up, "off the clock," before and after their shifts.

10.     Defendant's pre/post shift off the clock policy violates the FLSA and AWHA by depriving Ashenfelter and the other Hourly Employees of overtime wages when they work in excess of 40 hours in a workweek or, with respect to the AWHA, 8 hours per day.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court has supplemental jurisdiction over Plaintiff's Alaska state claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

13.     This Court has personal jurisdiction over Defendant based on its substantial business operations in Alaska, its substantial contacts with Alaska, and its substantial conduct directed toward Alaska, including employing Ashenfelter in Alaska subject to its pre/post shift off the clock policy and bonus pay scheme. Per Defendant's website, "Hecla's Greens Creek Mine in southeast Alaska is one of the largest and lowest-cost primary silver mines in the world, and it is the cash generating engine of the Company."[1]

---

[1] See Defendant's website last visited on June 25, 2025: https://www.hecla.com/operations/greens-creek-alaska.

14. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(2). Specifically, Defendant employed Ashenfelter subject to its pre/post shift off the clock policy in Juneau, Alaska, which is in this District.

## PARTIES

15. Defendant employed Ashenfelter as a Miner from approximately October 2021 to Present.

16. Throughout his employment, Defendant subjected Ashenfelter to its pre/post shift off the clock policy.

17. Ashenfelter's written consent is attached as Exhibit 1.

18. Ashenfelter brings this collective and class action on behalf of himself and Defendant's other employees on whom Defendant imposed its pre/post shift off the clock policy.

19. The FLSA Collective of similarly situated employees are defined as:

> **All Defendant's hourly employees who worked at an operation owned, operated, or controlled by Defendant during the last three years before this complaint was filed up until notice is issued, (the "FLSA Employees")**

20. The AWHA Class members are defined as:

> **All Defendant's hourly employees who worked at an operation owned, operated, or controlled by Defendant in Alaska during the last two years before this complaint was filed up until notice is issued, (the "Alaska Employees").**

21. Together, the FLSA Employees and Alaska Employees are referred to as the Hourly Employees.

4

22.    Defendant is a mining company with its principal place of business in Juneau, Alaska. Defendant may be served with process at Corporation Service Company, 8585 OLD DAIRY RD STE 208, JUNEAU, AK 99801.

## FLSA COVERAGE

23.    At all relevant times, Defendant was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

24.    At all relevant times, Defendant was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

25.    At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, tools, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

26.    At all relevant times, Defendant had an annual gross volume of sales made or business done of not less than $500,000 each year.

27.    At all relevant times, Ashenfelter and the other Hourly Employees were Defendant's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

28.    At all relevant times, Ashenfelter and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

29.     As a mining company, Defendant "produces more than 45 percent of all silver in the United States, and has operating mines in Alaska (Greens Creek), Idaho (Lucky Friday), Quebec, Canada (Casa Berardi) and Yukon Territory, Canada (Keno Hill)."[2]

30.     Defendant employs "more than 1,800 employees." *Id.* "Hecla is headquartered in Coeur d'Alene, Idaho, with a sister office in Vancouver, B.C and has operating mines in Juneau, Alaska, Idaho's Silver Valley, Quebec, Canada and Yukon Territory, Canada." *Id.* It also has a number of exploration properties in world-class silver and gold mining districts throughout North America.[3]

31.     To meet its business objectives, Defendant employs workers, including Ashenfelter and the other Hourly Employees, to mine.

32.     For example, Defendant employed Ashenfelter as an underground miner from approximately October 2021 to Present in its mine in Juneau, Alaska.

33.     The mining industry in which Defendant operates—whether involving coal, silver, or other metal and non-metal extraction—is among the most dangerous in the nation. To address these extreme hazards, Congress created the Mine Safety and Health Administration (MSHA), which enforces a separate and stricter set of safety standards than OSHA. These regulations reflect the life-threatening risks miners face on the surface and underground, including toxic gases, dust exposure, cave-ins, and use of heavy equipment in confined spaces. The regulations enacted under the MSHA require mine operators to provide, inspect, and maintain specialized personal protective equipment ("PPE") such as hard hats, headlamps, self-contained self-rescuers, proximity detection systems, and respirators. See 30 C.F.R. §§ 57.15002–15006, 57.15031. Operators must also furnish on-site bathing facilities and changing rooms so miners

---

[2] *See* https://www.hecla.com/company/about-us (last accessed June 22, 2025).
[3] See https://www.hecla.com/why-work-at-hecla. (last accessed June 22, 2025)

can clean up and store contaminated gear before leaving the employer's worksite. *See* 30 C.F.R. § 71.400–402. These requirements confirm that donning and doffing PPE and post-shift cleanup are not optional or personal choices, but essential, regulatory and employer-controlled aspects of working in an ultra-hazardous environment. Because the regulations also require daily inspections of equipment by authorized personnel, the miners are not allowed to bring the tools and equipment home. Therefore, they must don and doff all such PPE gear at the worksite where Defendant requires it to be stored.

34. As an underground miner, Ashenfelter's primary job duties were to operate the run loader and/or haul truck, operate heavy equipment, and maintain equipment.

35. Ashenfelter's job duties included donning and doffing his safety gear and protective clothing, traveling into the mine, and washing up, on Defendant's premises, before and after his scheduled shifts. Per the regulations, Defendant required Ashenfelter to shower at Defendant's worksite after each workday. *See, e.g.,* 30 CFR § 71.402, Minimum requirements for bathing facilities, change rooms, and sanitary flush toilet facilities. This is particularly true due to the toxic nature of lead, silver and other elements to which Ashenfelter and the Hourly Workers were exposed.

36. Throughout his employment, Ashenfelter recorded his "on the clock" hours using Defendant's designated timekeeping system.

37. Thus, Defendant's employment records reflect the number of "on the clock" hours Ashenfelter recorded working each week.

38. Throughout his employment, Ashenfelter regularly worked more than 40 hours a workweek.

39.     Indeed, throughout his employment, Ashenfelter typically worked approximately 11-13 hours a day and 5-6 days a week (in other words, 55 to 65 hours a workweek) "on the clock."

40.     For example, during the pay period that started on 1/26/2025 and ending on 2/8/2025, Ashenfelter worked a total of 80 regular hours and 41 overtime hours that was recorded by Defendant in its payroll and time records. However, Defendant did not pay him for the additional time he spent donning and doffing the PPE and other gear.

41.     Throughout his employment, Defendant did not pay Ashenfelter for all his hours worked.

42.     Instead, throughout his employment, Defendant subjected Ashenfelter to its pre/post shift off the clock policy.

43.     Specifically, Defendant required Ashenfelter to dress out in protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained self-rescuer, tracker, proximity box), fundamentally necessary to performing his job and travel into the mine, all "off the clock," and without compensation.

44.     This took Ashenfelter approximately 40-45 minutes each workday. Specifically, Ashenfelter was required to arrive approximately 40-45 minutes early to travel to the mine each workday, don his protective gear, and attend safety meetings, much if not all of such work time and/or waiting time after the first principal work duty was off-the-clock and thus uncompensated.

45.     In addition, after donning his required gear and the start of his workday, Defendant required him and other miners to travel on a bus on the employer's premises for 5 – 10 minutes to arrive at the mining work area.

46.     Ashenfelter could not perform his principal job duties in accordance with Defendant's policies, procedures, and expectations without this protective clothing and safety gear and travel into the mine.

47.     Indeed, much of the gear Ashenfelter utilized is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

48.     The donning of protective clothing and safety gear are therefore integral and indispensable work duties for Ashenfelter.

49.     Likewise, Defendant required Ashenfelter to travel out of the mine, remove and store his safety gear and protective clothing, and wash up each day at the end of his shift, all or most of which was "off the clock" and without compensation.

50.     This took Ashenfelter approximately 50-55 minutes each workday.

51.     Ashenfelter could not safely perform his job duties in accordance with Defendant's policies, procedures, and expectations without removing and storing this safety gear and protective clothing and washing up each workday.

52.     The removal and storage of safety gear and protective clothing and washing up each day are therefore integral and indispensable work duties for Ashenfelter.

53.     But under its pre/post shift off the clock policy, Defendant does not compensate him for the same.

54.     Thus, because of its pre/post shift off the clock policy, Defendant failed to pay Ashenfelter overtime wages for all his overtime hours worked during workweeks Ashenfelter worked in excess of 40 hours.

55.     Furthermore, despite its agreement to do so, Defendant never provided or made available work-free, uninterrupted bona fide meal breaks to Ashenfelter.

9

56.     Defendant likewise never provided or made available work-free, uninterrupted rest breaks to Ashenfelter.

57.     Rather, Ashenfelter spent his entire workday working on behalf of Defendant for its primary benefit.

58.     Ashenfelter and the other Hourly Employees perform their jobs under Defendant's supervision and use materials, equipment, and technology Defendant approves and supplies.

59.     Defendant requires Ashenfelter and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

60.     Ashenfelter's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by Defendant.

61.     At the end of each pay period, Ashenfelter and the other Hourly Employees receive wages from Defendant that are determined by common systems and methods that Defendant selects and controls.

62.     Likewise, the other Hourly Employees typically record working approximately 11-13 hours a day and 5-6 days a week (55-65 hours a workweek) "on the clock."

63.     But, just as with Ashenfelter, Defendant fails to pay them for all their hours worked.

64.     Indeed, Defendant uniformly subjects the other Hourly Employees to the same or similar pre/post shift off the clock policy it imposed on Ashenfelter.

65.     Specifically, just as with Ashenfelter, Defendant requires them to arrive early to work, travel to the mine, dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear plugs, steel toed boots, safety glasses, gloves, self-contained

self-rescuer, tracker, proximity box), fundamentally necessary to performing their jobs and travel into the mine, much or all such work was "off the clock," and without compensation.

66.     And Defendant requires them to exit the mine and remove and store their safety gear and protective clothing, wash up after their shifts, and travel from the mine to the centralized location before they can leave for the day, likewise, much or all of which is "off the clock" and without compensation.

67.     Defendant also requires all Hourly Employees to store all of the required PPE and gear on Defendant's worksite, which results in such employees' inability to put on and take off such PPE and gear at home.

68.     And like Ashenfelter, much of the gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

69.      But, like Ashenfelter, the other Hourly Employees are regularly forced to perform this compensable work "off the clock" before and/or after their shifts.

70.     Thus, just as with Ashenfelter, Defendant does not pay the other Hourly Employees for this integral and indispensable work they are required to perform "off the clock" before and after their scheduled shifts.

71.     And, just as with Ashenfelter, these job duties take the other Hourly Employees approximately 1 to 2 hours to complete each workday.

72.     And, despite its agreement to do so, Defendant never provided or made available work free, uninterrupted meal breaks to the other Hourly Employees.

73.     Defendant likewise never provided or made available to work free, uninterrupted rest breaks to the other Hourly Employees.

74.     Rather, like Ashenfelter, the other Hourly Employees spend their entire workdays working on behalf of Defendant for its primary benefit.

75.     Defendant fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Defendant does not want performed.

76.     And Defendant knows, should know, or recklessly disregards whether Ashenfelter and the other Hourly Employees routinely perform integral and indispensable work "off the clock," and without compensation, before and after their scheduled shifts for Defendant's primary benefit.

77.     Thus, Defendant requests, suffers, permits, or allows Ashenfelter and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

78.     Despite accepting the benefits, Defendant does not pay Ashenfelter and the other Hourly Employees for the compensable work they perform "off the clock."

79.     Thus, under Defendant's uniform pre/post shift off the clock policy, Ashenfelter and the other Hourly Employees are denied overtime wages for the compensable work they perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours.

80.     And throughout their employment, Defendant has not paid Ashenfelter and the other Hourly Employees at the required premium rate for all hours worked in excess of 40 in a workweek or 8 hours in a workday.

## FLSA COLLECTIVE ACTION ALLEGATIONS

81.     Ashenfelter brings his claims as a collective action under Section 216(b) of the FLSA on behalf of himself and the other Hourly Employees.

82.     Like Ashenfelter, the other Hourly Employees are victimized by Defendant's pre/post shift off the clock policy.

83.     Other Hourly Employees as defined above as "FLSA Employees" worked with Ashenfelter were paid in the same manner, performed similar work, and were subject to Defendant's same pre/post shift off the clock policy.

84.     Based on his experience with Defendant, Ashenfelter is aware Defendant's pre/post shift off the clock policy was imposed on other Hourly Employees.

85.     The Hourly Employees are similarly situated in the most relevant respects.

86.     Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

87.     Therefore, the specific job titles or job locations of the Hourly Employees do not prevent collective treatment.

88.     Rather, Defendant's pre/post shift off the clock policy and bonus pay scheme render Ashenfelter and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

89.     Defendant's records reflect the number of "on the clock" hours the Hourly Employees were recorded as working each week.

90.     Defendant's records also show Defendant paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay. For example, for the pay period ending 12/31/2024, Defendant paid Ashenfelter a safety bonus of $2,493.80, but did not factor such additional compensation into his regular rate of pay for purposes of determining his

13

overtime rate. Defendant likewise paid other Hourly Employees additional compensation that was illegal excluded from the regular rate of pay, thereby diluting the overtime rate.

91. The back wages owed to Ashenfelter and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

92. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Defendant's records, and there is no detraction from the common nucleus of liability facts.

93. Therefore, the issue of damages does not preclude collective treatment.

94. Ashenfelter's experiences are therefore typical of the experiences of the other Hourly employees.

95. Ashenfelter has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent collective treatment.

96. Like each Hourly Employee, Ashenfelter has an interest in obtaining the unpaid wages owed under federal law.

97. Ashenfelter and his counsel will fairly and adequately protect the interests of the Hourly employees.

98. Ashenfelter retained counsel with significant experience in handling complex collective action litigation.

99. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Defendant will reap the unjust benefits of violating the FLSA.

100. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

101.     Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and Defendant.

102.     Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

103.     The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

104.     Among the common questions of law and fact are:

    a.     Whether Defendant imposed its pre/post shift off the clock policy on the Hourly Employees;

    b.     Whether Defendant's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

    c.     Whether Defendant failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration— for all overtime hours worked;

    d.     Whether Defendant's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration— for all overtime hours worked was made in good faith; and

    e.     Whether Defendant's violations were willful.

105.     Ashenfelter knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

106.     As part of its regular business practices, Defendant intentionally, willfully, and repeatedly violated the FLSA with respect to Ashenfelter and the other Hourly Employees.

107.     Defendant's pre/post shift off the clock policy deprived Ashenfelter and the other Hourly Employees of the overtime wages at the required premium rate— based on all remuneration—for overtime hours worked, in willful violation of the FLSA.

108.     There are many similarly situated Hourly Employees who have been denied overtime pay at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

109.     The Hourly Employees are known to Defendant, are readily identifiable, and can be located through Defendant's business and personnel records.

## RULE 23 CLASS ACTION ALLEGATIONS

110.     Plaintiff incorporates the preceding paragraphs in this section.

111.     Plaintiff proposes to maintain this lawsuit as a class action under the Alaska state wage laws on behalf of the putative class action members, defined as follows:

> **All Defendant's hourly employees who worked at an operation owned, operated, or controlled by Defendant in Alaska during the last two years before this complaint was filed up until notice is issued, (the "Alaska Employees").**

112.     The Plaintiffs and the other Class members constitute a Class within the meaning of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Each of the other Class members is similarly situated to the Plaintiffs with respect to his or her rights under the AWHA.

113.     Common questions of law and fact are common as to all Class Members including, but not limited to, the following:

a.     Whether Defendant imposed its pre/post shift off the clock policy on the Hourly Employees;

b.  Whether Defendant's pre/post shift off the clock policy deprived the Hourly Employees of overtime compensation for overtime hours worked;

c.  Whether Defendant failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration such as bonuses— for all overtime hours worked;

d.  Whether Defendant owes the Hourly Employees wages for failing to provide them with a bona fide meal break; and

e.  Whether Defendant's wage violations were done in good faith and based on a reasonable grounds.

114.  Plaintiff's claims are typical of the claims of the other members of the Class in that he suffered the loss of wages based on the same policies and practices applicable to the Class, as stated in detail above.

115.  Plaintiff will fairly and adequately protect and represent the interest of the Class.

116.  The Plaintiffs and their counsel have the time, ability and resources to prosecute this action.

117.  Plaintiff's counsel has vast experience litigation class and collective action cases in the wage and hour field in federal courts across the country.

118.  The Class is so numerous as to render joinder of all members impracticable in that there are hundreds of members of the Class.

119.  The questions of law and fact common to the Class predominate over any questions affecting only individual members.

120.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

121. No Class member has an interest in individually controlling the prosecution of a separate action under the AWHA.

122. Plaintiff has personal knowledge that other putative Class Action Members were paid in the same manner, performed similar work, and were subject to Defendant's same pre/post shift off the clock policy.

123. The Putative Class Action Members are similarly situated to Plaintiff and to one another, within the meaning of Federal Rule of Civil Procedure 23.

124. The Putative Class Action Members are not exempt from receiving overtime premium pay under the AWHA. Defendant's failure to pay regular and overtime wages results from generally applicable policies or practices and does not depend on the personal circumstances of the putative Class Action Members.

125. The specific job titles or precise job responsibilities of each putative Class Action Members do not prevent class treatment.

126. Although the exact amount of damages may vary among the putative Class Action Members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

127. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a Class action or other proceeding.

128. Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

## HECLA'S VIOLATIONS WERE WILLFUL

129. Defendant knew it employed the Hourly Employees.

130.     Defendant knew it was subject to the FLSA's overtime provisions and AWHA overtime provisions.

131.     Defendant knew Ashenfelter and the other Hourly Employees were its non-exempt employees entitled to overtime pay.

132.     Defendant knew the FLSA and AWHA required it to pay non-exempt employees, including Ashenfelter and the other Hourly Employees, overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek under the FLSA and after 8 in a day under the AWHA.

133.     Defendant knew Ashenfelter and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years or 8 hours in a workday in the last two years because Defendant recorded their "on the clock" hours via its timekeeping system.

134.     Defendant knew it paid the Hourly Employees according to its pre/post shift off the clock policy.

135.     Defendant knew it had a duty to ensure the Hourly Employees were not performing work "off the clock" (without pay).

136.     Defendant knew it required the Hourly Employees to don and doff safety gear and protective clothing, then travel into the mine, and wash-up, "off the clock."

137.     Defendant knew it controlled the Hourly Employees' work procedures.

138.     Defendant knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with Defendant.

139.     Defendant knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement to their principal job duties with Defendant.

140. Defendant knew the Hourly Employees routinely performed this daily, required "off the clock" work for Defendant's predominant benefit.

141. In other words, Defendant knew the Hourly Employees performed compensable work (e.g., donning/doffing their safety gear and protective clothing, then traveling into the mines, and washing-up) "off the clock" and without compensation.

142. Defendant knew it paid Ashenfelter and Hourly Employees safety bonuses and/or other remuneration that was excluded from the regular hourly rate of pay in violation of applicable wage laws.

143. And Defendant knew the FLSA and AWHA required it to pay Ashenfelter and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

144. Defendant knew Ashenfelter and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

145. Thus, Defendant knew, should have known, or recklessly disregarded whether it failed to pay Ashenfelter and the other Hourly Employees at least 1.5 times their regular rates of pay— based on all remuneration—for all the hours they worked in excess of 40 a workweek.

146. Defendant's failure to pay Ashenfelter and the other Hourly Employees overtime at the required rates—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this decision made in good faith.

147. Defendant knowingly, willfully, and/or in reckless disregard of the FLSA and AWHA carried out its unlawful pre/post shift off the clock policy that deprived Ashenfelter and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek, in violation of the FLSA and AWHA.

# CAUSE OF ACTION
## VIOLATION OF FLSA AND AWHA
## FAILURE TO PAY OVERTIME PURSUANT 29 U.S.C. § 207 AND AS 23.10.060

148.    Ashenfelter brings his FLSA claim as a collective action on behalf of himself and the other Hourly Employees.

149.    Ashenfelter also brings this lawsuit individually and as a class action under the AWHA on behalf of other employees of Defendant.

150.    Federal law requires covered employers to pay overtime premium pay at the rate of one and one-half times the regular rate of pay to non-exempt employees for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207.

151.    Alaska law requires Alaska employers to pay overtime premium pay at the rate of one and one-half times the regular rate of pay to non-exempt employees for all hours worked over forty (40) in a workweek or eight (8) hours a day. AS 23.10.060.

152.    Defendant violated, and is violating, the FLSA and AWHA by employing non-exempt employees, such as Ashenfelter and the other Hourly Employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

153.    Defendant's unlawful conduct harmed Ashenfelter and the other Hourly Employees by depriving them of the overtime wages they are owed.

154.    Accordingly, Defendant owes Ashenfelter and the other Hourly Employees the difference between the wages actually paid and the overtime wages actually earned.

155.    Because Defendant knew, or showed reckless disregard for whether its bonus pay scheme and pre/post shift off the clock policy violated the FLSA and AWHA, Defendant owes

Ashenfelter and the other Hourly Employees these wages for at least the past 3 years under the FLSA and last 2 years under the AWHA.

156. Defendant is also liable to Ashenfelter and the other Hourly Employees for an amount equal to all their unpaid overtime wages as liquidated damages.

157. Finally, Ashenfelter and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

158. Ashenfelter demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Ashenfelter, individually and on behalf of the other Hourly Employees, seeks the following relief:

    a. An order conditionally certifying this case as an FLSA collective action and a AWHA class action and requiring notice to be issued to all putative class and collective action members;

    b. An Order finding Defendant liable to Ashenfelter and the other Hourly Employees for unpaid overtime wages owed under the FLSA and AWHA, plus liquidated damages in an amount equal to their unpaid wages;

    c. A Declaration that Defendant's actions violate the FLSA and AWHA;

    d. Judgment awarding Ashenfelter and the other Hourly Employees all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA and AWHA;

    e. An Order awarding attorneys' fees, costs, and expenses;

f.  An Order awarding pre and post-judgement interest at the highest applicable rates allowed by law; and

g.  Such other and further relief as may be necessary and appropriate.

DATED this 24th day of July 2025.

*Attorneys for Plaintiff And Putative Class Members*

*/s/      Thomas V. Wang*
Thomas V. Wang
Thomas@anchorlaw.com
Laura D. Fisher
laura@anchorlaw.com
ASHBURN & MASON, P.C.
1227 West 9th Ave., Suite 200
Anchorage, AK 99501
(907) 276-4331 (main office)
(907) 865-9207 (direct)
(907) 277-8235 (fax)


Galvin Kennedy (pro hac vice pending)
Galvin@kennedyattorney.com
KENNEDY LAW FIRM, LLP
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
Telephone: 713- 425-6445
Facsimile: 888-535-9271

Carl A. Fitz (pro hac vice pending)
Tex. State Bar No. 24105863
FITZ LAW PLLC
3730 Kirby Drive, Ste. 1200
Houston, Texas 77098
P: (713) 766-4000
carl@fitz.legal